**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Civil No.:  CCB-12-2632** |
| **ANTONIO THOMPSON,** | **Crim. No.: CCB-09-0128** |
| **Defendant.** | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The United States of America, by and through its undersigned counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Robert R. Harding, Assistant United States Attorney for said District, respectfully submits the following Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (henceforth "Thompson Pet.").

## PROCEDURAL BACKGROUND

On March 13, 2009, a federal grand jury indicted Antonio Thompson on two counts: Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841 (a) (1) (Count 1); and Felon in Possession in violation of 18 U.S.C. § 922 (g) (1) (Count 2).

On July 23, 2009, the Honorable Catherine C. Blake denied Mr. Thompson's Motion to Suppress Evidence Seized from 2800 Virginia Avenue and reserved Mr. Thompson's Motion to Obtain Identity of Confidential Informant.  On August 14, 2009 the Government filed a Motion in Limine to Admit 404(b) Evidence and Mr. Thompson filed his Response on August 26, 2009.

Mr. Thompson's first jury trial began on September 22, 2009 and ended in a mistrial on September 25, 2009.  Mr. Thompson's second jury trial began on December 7, 2009 and concluded on December 10, 2009 with findings of guilty on both counts.

On March 19, 2010 the District Court imposed a sentence of 300 months of incarceration on Count 1 and a concurrent sentence of 120 months on Count 2.

On appeal, Mr. Thompson challenged the District Court's denial of his Motion to Suppress Evidence Seized from 2800 Virginia Avenue.  Finding no error, on April 12, 2011 the U.S. Court of Appeals for the Fourth Circuit issued an unreported opinion affirming Mr. Thompson's conviction.  *See* 423 Fed.Appx. 334, 2011 WL 1376873 (C.A.4 (Md.), attached as Exhibit D.

On September 4, 2012, Mr. Thompson filed a Motion Pursuant to § 2255.  On September 11, 2012 the District Court entered an Order directing the Government to respond.  Finally, on December 06, 2012 the District Court entered an Order granting the Government's Motion for Extension of Time to File/Reply to the Motion Pursuant to § 2255.

## FACTUAL BACKGROUND

In the fall of 2008, Baltimore City Police Detective John Minton  worked with an informant who told him that "Bones" was dealing crack out of 2800 Virginia Avenue.  Tr. of Day 1 at 34.  Detective Minton gave $300 to the informant on October 14, 2008 and watched from a short distance as the informant approached Mr. Thompson and handed him the money.  *Id.* at 36-40.  Mr. Thompson took the money and turned around, walked to the front door of 2800 Virginia Avenue, and used a key to go inside.  *Id.* at 40.  After a short time (30-45 seconds), Minton watched as Mr. Thompson emerged from 2800 Virginia Avenue carrying two "eight

balls" (1/8 ounce packages) of crack and handed them to the informant who, in turn, gave them to Detective Minton. *Id.* at 40-41. Minton then watched as Thompson walked up the street to 2913 Virginia Avenue. *Id.* at 42.

At the time of the controlled purchase, Detective Minton did not know Mr. Thompson's name; he only knew the street name "Bones" that the informant provided. Minton proceeded to get Mr. Thompson's name using a ruse. *Id.* at 44-45. After the controlled purchase, Minton went up to 2913 Virginia in uniform, knocked on the door, and *immediately* recognized the man who answered the door as Bones. *Id.* at 45. When Mr. Thompson gave Detective Minton his driver's license, Detective Minton learned that Bones' name was Antonio Thompson and that his address was 2800 Virginia Avenue. *Id.* at 46.

On November 18, 2008, Judge Chiparelli signed search and seizure warrants for 2800 Virginia Avenue and 2913 Virginia Avenue. Tr. of Day 1 at 46. Detective Minton continued to stay in touch with the informant after obtaining the search and seizure warrants, and based on information the informant provided, the Detective decided to execute the search warrants on November 24, 2008. *Id.* at 47. Upon execution of the search and seizure warrant at 2800 Virginia Avenue, detectives seized a nine millimeter semi-automatic handgun, approximately 54 grams of crack, scales, a mirror, and razor blades. Tr. of Day 2 at 7-15.

At trial, Mr. Thompson argued that he did not reside at 2800 Virginia Avenue, and therefore did not have a control of the crack and the gun seized from that address. However, the government produced substantial evidence to the contrary. Mr. Gordon Horowitz, the landlord of 2800 Virginia Avenue, testified that Mr. Thompson alone was leasing 2800 Virginia Avenue when the police executed the search warrant. Tr. of Day 2 at 94. The raid team found mail in Mr. Thompson's name inside the door of 2800 Virginia Avenue. *Id.* at 16. Baltimore Gas &

3

Electric (BG&E) service for 2800 Virginia Avenue was registered in Mr. Thompson's name.  *Id.* at 220.  Thompson listed 2800 Virginia Avenue as his address with the Motor Vehicle Administration (MVA).  Tr. of Day 1 at 46.

Tracy Alston,  a cooperator, testified about statements Thompson made to him when the two men were incarcerated together awaiting their trials.  Tr. of Day 2 at 115-20.  Alston testified that he and Thompson discussed drug trafficking while they were incarcerated in the Baltimore City "Supermax" Detention Center.  *Id.* at 133-134.  He testified that Mr. Thompson described his recent crack business, including his sale of weight (i.e. wholesale quantities) such as "eight balls" for $125 or $150, his possession of a gun, and his attempt to "stash" his crack and his gun so the police could not find them.  *Id.* at 134-140.  Although Thompson was charged with possession with intent to distribute cocaine base, the Court also admitted a few seconds of Alston's testimony regarding Thompson's method of cutting or diluting of heroin.  *Id.* at 136, lines 7-20  ( "He [Thompson] told me how to cut heroin").

## PETITIONER'S CLAIMS

In his Petition, Mr. Thompson raises the following claims:

1. Appellate counsel was ineffective for failing to argue against admitting 404(b) evidence regarding heroin and to argue against admitting uncorroborated 404(b) evidence.

2. Appellate counsel was ineffective for failing to challenge the sufficiency of the evidence.

3. Trial counsel was ineffective for failing to honor Mr. Thompson's right to confront his accuser.

4. Appellate counsel was ineffective for failing to argue that the Fair Sentencing Act's mandatory minimum sentences should apply retroactively to Mr. Thompson.

5. Appellative counsel was ineffective for failing to argue that the penalties in 21 U.S.C. § 841 for crimes involving cocaine base are reserved for crimes involving crack cocaine, a specific form of cocaine base.

6. Trial counsel was ineffective for failing to investigate Mr. Thompson's criminal history.

## ARGUMENT

### A.  Legal Standard for Ineffective Assistance of Counsel

A petitioner meets the requirements for ineffective assistance of counsel only by demonstrating that his "attorney['s] performance fell below an objective standard of reasonableness and that [he] suffered prejudice as a result." *United States v. Makalajunas*, 186 F.3d 490, 493 (4th Cir. 1999).  The Supreme Court has divided this into a two-part test to determine whether a petitioner received adequate assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668 (1984); *see also Roach v. Martin*, 757 F.2d 1643 (4th Cir. 1985); *Hill v. Lockhart*, 474 U.S. 52 (1985); *Makajunas*, 186 F.3d at 493.

In order to establish the first part of the test, the defendant must show that counsel's performance was not "within the range of competence normally demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687.  There is a strong presumption that counsel's conduct was within the wide range of reasonable assistance.  *Id.* at 689.  The Fourth Circuit holds that:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too easy for a defendant to second guess counsel's assistance after conviction[.] . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

*Roach v. Martin*, 757 F.2d 1463, 1476 (4 Cir. 1985).

To satisfy the second part of the *Strickland* test, the petitioner must show that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  To prevail on an ineffective assistance of counsel claim, petitioner must satisfy both parts of the *Strickland* test.  *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987).

The first inquiry – whether counsel's performance was deficient – may be bypassed if it is easier to dispose of the claim on the ground of lack of prejudice. *Strickland*, 466 U.S. at 697. The burden is squarely on Defendant to show prejudice. *Hutchins v. Garrison*, 724 F.2d 1425, 1431 n.4 (4th Cir. 1983).

**B.  Issues**

1. **Mr. Thompson's Appellate Counsel Was Not Ineffective for Not Challenging the Admission of 404(b) Evidence Involving Heroin.**

    a. **Appellate counsel is not required to raise every non-frivolous issue requested by a defendant.**

Appellate counsel "does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant." *Jones v. Barnes*, 463 U.S. 745 (1983).  In an email to AUSA, Robert Harding, appellate counsel states that "[w]e discussed the 404(b) issue and elected not to pursue it because we thought it lacked merit and we had other, stronger issues." *See* Exhibit B.

6

Because there is a strong presumption that counsel's conduct was within the wide range of reasonable assistance, s*ee Strickland*, 466 U.S. at 694, the presumption is that appellate counsel's identification of the "stronger issues" was reasonable.   The 404(b) issue was not "clearly stronger" than the lack of probable cause arguments counsel raised on appeal.

District Courts are given broad discretion in determining whether to admit 404(b) evidence and a "decision to admit evidence under Rule 404(b) will not be overturned on appeal unless it was 'arbitrary or irrational.'"   *United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990).   According to the Fourth Circuit, "the danger inherent in admitting prior 'bad act' evidence is that it will be considered impermissibly as evidence of character[.]"   *U.S. v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012).   However, "[a]lthough prior 'bad act' evidence is inadmissible under Rule 404(b) to demonstrate a defendant's bad character, such evidence is not always barred from trial altogether."   *Id.* at 395.   Rule 404(b) provides several exceptions that allow for the admission of prior "bad act" evidence, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   Fed.R.Evid. 404(b).

### b.   A limiting jury instruction and notice by the government of intent to use 404(b) evidence militated against the impermissible use of the heroin testimony.

Although the Fourth Circuit has recognized that its decisions regarding the admissibility of 404(b) evidence "appear to lack consistency," .it is clear that there are two critical elements that guard against the dangers inherent in admitting 404(b) evidence:

> [A] limiting jury instruction, when requested by a party, explaining the purpose for admitting evidence of prior acts, and (2) the requirement in a criminal case of advance notice, when so requested, of the intent to introduce prior act evidence. When Rule 404(b) is administered according to these rules, it will not, we believe, be applied to convict a defendant on the basis of bad character, or to convict him for prior acts, or to try him by ambush. … In cases where the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may

improperly use the evidence subsides.  And in cases where the prosecution has notified the defendant of its intent to use particular Rule 404(b) evidence and where there is no evidence that the prosecution is placing the defendant's entire earlier life on trial, the fear of a "trial by ambush" recedes.

*United States v. Queen*, 132 F.3d 991, 995, 997 (4th Cir. 1997).  In this case, In this case, the 404(b) issue was raised and litigated pretrial on the papers.  Because there were two trials, Judge Blake had the opportunity to fully hear and assess Alston's testimony before ruling anew on the 404(b) issue in the second trial. The District Court also gave a limiting jury instruction after Alston's testimony:

> Just to be clear on one thing, ladies and gentlemen, Mr. Thompson is on trial now only for the two matters, the two offenses, crimes that are charged in the indictment in November of 2008.
>
> To the extent that Mr. Alston's testimony related to other or different drugs or events, it is important to remember he is not on trial for that, and that is only being offered to the extent you find it helpful, if you do, on the question of whether the government has proved the *elements of knowledge and intent* that relate to the current charges.

Tr. of Day 2 at 167 (emphasis added).

### c.  The District Court's decision to admit the heroin testimony part of a tailored ruling.

The District Court restricted Alston's heroin testimony to conversations regarding recent cutting of heroin immediately before Alston took the stand:

> THE COURT: Okay.  I think if it is current conversation, if it is something about ongoing events or ongoing knowledge, then it is admissible.
>
> I don't think the mention of another type of drug that one can also cut is sufficiently prejudicial or unfairly prejudicial because it is still a controlled substance, and it is still indicating knowledge of cutting it and using cutting agent.
>
> All I'm trying to get at is that I think anything that goes back to what may or may not have been going on in terms of any drug dealing in 1994, 1995, that is simply too far in the distant past to be relevant for any purpose under 404(b).
>
> If this is a current conversation about how one does this now, I think it does go to show Mr. Thompson's knowledge and it does relate to what has already become somewhat of an issue, purity, and what do you do with things that are controlled dangerous substances, cornstarch, or whatever they are, some of which the DEA chemist could identify and some of which she couldn't.

So I am not excluding all testimony about heroin and mixing it.  I am excluding any testimony that goes back to events earlier than certainly the mid 2000's.  I mean it seems to me 2007, 2008 is what is reflected in the transcript, and it's a very current conversation that Mr. Alston allegedly had with Mr. Thompson.

To the extent it involves some current conversation about heroin and how you cut heroin as an ongoing event, that I'm allowing in.  If it relates back to the '90's, no, I don't want to [sic] Mr. Alston to testify about that.

Tr. of Day 2 at 121, Line 1 through 122, Line 9.

As a result of this tailored ruling, Alston's testimony dealt primarily with facts that were directly admissible because they had to do with his crack trafficking. His comments on heroin lasted only a few seconds.  Mr. Alston's testimony focused almost exclusively on describing several details regarding Thompson's recent crack business, including his sale of wholesale quantities, his possession of a gun, and his attempt to "stash" his crack and his gun to avoid recovery by the police.  *See* Tr. of Day 2 at 134, Line 22 through 140, Line 17.

### d. Alston's testimony regarding heroin meets the Fourth's Circuit's four-factor test for admissibility.

The Fourth Circuit has developed a four-factor test for determining the admissibility of prior "bad acts" evidence:

[W]e hold that evidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria: (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*Queen*, 132 F.3d at 997.

First of all, Mr. Alston's testimony was "reliable" for three reasons.  First, Alston's plea arrangement with the government was designed to provide the maximum incentive for Alston to tell the truth.  *See* Tr. Of Day 2 at 131 (if Alston did not tell the truth he could get the maximum sentence of life imprisonment).  Second, the District Court had an opportunity to evaluate Alston's credibility during the first trial that ended in a mistrial.  After observing Alston's testimony during the first trial, where he also testified about heroin, the District Court made its tailored ruling to allow testimony regarding recent activities with heroin.  *Id.* at 121.  Third, Alston's testimony was inherently reliable because he provided details that only Thompson could have provided, for example, that the government had charged Thompson with possession of drugs and a gun,  *Id.* at 138, that Thompson was selling wholesale quantities of crack,  *Id.* at 135, specifically, "eight balls" (1/8 ounce packages) of crack for $150, *Id.*, which was consistent with Minton's testimony about the sale of two eight balls to the informant for $300, and that Mr. Thompson thought he would beat the charges against him because he "stashed" his crack and his gun,  *Id.* at 137.  Alston also knew that Mr. Thompson "stashed" his drugs and his gun to avoid detection.  *Id.* at 137.  When the police raided 2800 Virginia Avenue they found crack in the false bottom of a fruit cocktail can and a semi-automatic handgun buried in the sofa. *Id.*  at 4-6; *Id.* at 14.

Second, the probative value of Mr. Alston's testimony is not substantially outweighed by confusion or unfair prejudice (in the sense that it tended to subordinate reason to emotion in the factfinding process).  There was nothing emotional about the heroin testimony.  Mr. Alston only testified that he and Mr. Thompson talked about heroin and that Mr. Thompson told him how to cut it.  Tr. of Day 2 at 136.  This testimony lasted only a few seconds and the District Court

provided a limiting instruction to explain that the jury could only use any testimony regarding other drugs when evaluating the elements of knowledge and intent. *Id.* 167.

Third, Alston's testimony was "relevant".  For evidence to be relevant, it must be "sufficiently related to the charged offense." *McBride*, 676 F.3d at 397 (citation omitted).  "The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act." *Id.* (citation omitted).  In ruling on the admissibility of the heroin testimony, the District Court was explicit that the heroin testimony could not relate to events occurring "earlier than certainly the mid 2000's." Tr. Of Day 2 at 121, Line 25.  This ensured the testimony was closely related in time to the charged crimes.  Furthermore, the heroin testimony regarding cutting was closely related in pattern and state of mind because the police recovered cornstarch (a cutting agent) in Thompson's apartment. Tr. Of Day 2 at 118, Lines 19-21. ("So it is relevant in that it's the same kind of purpose for which quinine and bonita are used in connection with heroin.  It's a diluent, cornstarch.")

Fourth, Alston's testimony was "necessary".  The Fourth Circuit has held that "evidence is necessary, for purposes of establishing an exception under Rule 404(b), when that evidence is an essential part of the crimes on trial or when that evidence furnishes part of the context of the crime." *McBride*, 676 F.3d at 398 (citation and internal quotations omitted).  In *McBride*, the Fourth Circuit found the informant's testimony to not be necessary because the "government did not present a basis for concluding that [the informant's] testimony was an essential part of the crimes on trial." *Id.*  In this case, the government did explain how cutting is an essential part of trafficking wholesale quantities of cocaine base. *See* Tr. Of Day 2 at 118, Lines 13-18.  Also, the heroin testimony furnished part of the context of the crime because it demonstrated that Mr. Thompson had knowledge of how to cut drugs.

Various Circuits have expressly held that 404(b) evidence regarding *different* drugs is admissible. *See United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir.1996) ("Similarity is tougher, but given our deferential standard of review, we concur in the district court's conclusion that the prior conviction was similar enough for 404(b) purposes. Different drugs were involved, but both incidents concerned distribution amounts of drugs."); *see United States v. Hernandez*, 896 F.2d 513, 522 (11th Cir.1990) (The defendant's prior narcotics activity was "distinguishable only in that the drug in the earlier conviction was marijuana whereas this case involved cocaine. We do not view this as a material distinction; the element of intent in the extrinsic and charged offenses was the same."); *see United States v. Batts*, 573 F.2d 599, 603 (9th Cir.1978) ("In this case the [404(b)] evidence consisted of prior activity in drugs, albeit a different drug. The connecting factor between the crime charged here and the rebuttal evidence is the fact that the crime here charges an intent to distribute (hashish) and the rebuttal evidence discloses acts of negotiation leading up to an act of distribution. Merely because the drugs involved are different does not strip this conduct of its evidentiary value.").

Consequently, appellate counsel was not ineffective for not challenging the 404(b) testimony.

> e.   **Mr. Thompson's Appellate Counsel Was Not Ineffective for Omitting to Challenge the Lack of Corroboration for the 404(b) Evidence Involving Heroin.**

As part of his 404(b) argument Mr. Thompson also argues that "[w]hen Alston's 404(b) evidence was not corroborated, Petitioner Thompson's right to Due Process under The Fifth Amendment was violated." Thompson's Pet. at 16. This contention is meritless. Thompson misconstrues the standard for admissibility of 404(b) evidence, because "corroboration" is simply not part of the four-factor test. Corroboration of testimony is not even required for a

conviction.  "The uncorroborated testimony of one witness or an accomplice may be sufficient to sustain a conviction." *United States v. Strong*, 67 F. App'x 198, 199 (4th Cir. 2003) (citing *United States v. Wilson,* 115 F.3d 1185, 1190 (4th Cir.1997)).

Thus, appellate counsel was not ineffective for omitting to challenge the lack of corroboration for Mr. Alston's heroin testimony.

2. **Mr. Thompson's Appellate Counsel Was Not Ineffective for Omitting to  Challenge the Sufficiency of the Evidence.**

Mr. Thompson argues that his "[a]ppeal lawyer was ineffective for not arguing on direct appeal that the evidence was insufficient."  Thompson's Br. at 17.   Mr. Thompson contends that the evidence was insufficient for the following reasons:

1) No positive ID of Petitioner when C.I. allegedly bought drugs from him and Petitioner was not arrested on the scene.
2) The Confidential Informant did not testify.
3) The police failed to follow their own protocal [sic].
4) Detective Minton's ID of Petitioner is questionable.
5) Fingerprints were not lifted.
6) Witness [sic] Lansey and Sharma could not tie Petitioner to the crime.
7) Tracey [sic] Alston was not credible, e.g. his testimony was impossible to corroborate.

Thompson's Pet. at 38.

a. **The standard of review for insufficiency of the evidence arguments places a heavy burden on the appellant.**

As a general matter, on appeal, "[a] defendant challenging the sufficiency of the evidence faces a heavy burden." *United States v. Foster*, 507 F.3d 233, 245 (4th Cir.2007).  It is very difficult for a defendant to win an argument that there was insufficient evidence for his conviction because the standard of review favors the government.  "The standard of review is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Further, "[i]n reviewing the sufficiency of the evidence, [the appellate court is] not entitled to weigh the evidence or to assess the credibility of witnesses, but must assume that the jury resolved all contradictions ... in favor of the Government."  *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (citation omitted).

**b. The government presented overwhelming evidence to support Mr. Thompson's conviction.**

The government's evidence included a controlled purchase, the recovery of wholesale quantities of crack and a semi-automatic handgun from 2800 Virginia Avenue, substantial evidence connecting Mr. Thompson to 2800 Virginia Avenue, and testimony from a cooperator (Mr. Alston) that confirmed many of the government's factual contentions.  Detective Minton testified that he observed a complete sales transaction between a CI and Mr. Thompson.  During this transaction, Mr. Thompson took $300 from the CI and, after entering 2800 Virginia Avenue for about 30-45 seconds, emerged with two eight-balls of crack cocaine.  Tr. of Day 1 at 36-41. Mr. Alston testified that Mr. Thompson was selling eight-balls for $150, which is completely consistent with this sale of two eight-balls for $300.  After the controlled purchase, Detective Minton watched as Thompson walked up the street and entered 2913 Virginia Avenue.  *Id.* at 42. When Detective Minton knocked on the door of 2913 Virginia Avenue, he *immediately* recognized the man who answered the door as the man who sold the crack to the CI.  *Id.* at 45. Detective Minton identified Mr. Thompson through his driver's license.  *Id.* at 46.

Pursuant to search warrant, a raid team found wholesale quantities of crack cocaine and a semi-automatic handgun in 2800 Virginia Avenue - the same residence that Mr. Thompson used to obtain the crack he sold during the controlled purchase.  Mr. Alston testified that not only was

Mr. Thompson selling wholesale quantities of crack, but also that Mr. Thompson thought he would beat the charges against him because he "stashed" his crack and his gun. *Id.* at 137. During their search of 2800 Virginia Avenue the police found crack in the false bottom of a fruit cocktail can and a semi-automatic handgun buried in the sofa. *Id.* at 4-6; *Id.* at 14.

The government presented substantial evidence tying Mr. Thompson to 2800 Virginia Avenue. The landlord of 2800 Virginia Avenue testified that Mr. Thompson alone was leasing 2800 Virginia Avenue when the police executed the search warrant on November 24, 2008. Tr. of Day 2 at 94. Officer Gerald Hensley testified that during its search pursuant to a signed warrant, the raid team found mail in Mr. Thompson's name in the door of 2800 Virginia Avenue. *Id.* at 16. Detective Benson testified that Baltimore Gas & Electric (BG&E) service for 2800 Virginia Avenue was registered in Mr. Thompson's name. *Id.* at 220. Furthermore, Thompson listed 2800 Virginia Avenue as his address with the Motor Vehicle Administration (MVA). Tr. of Day 1 at 46.

### c. All of Mr. Thompson's arguments for insufficiency of evidence are based on misstatements of the law or would have been futile to argue on appeal because of the strength of the government's case.

When a sufficiency of the evidence argument would be futile or has no basis in law, failing to challenge the sufficiency of the evidence on appeal is not ineffective assistance of counsel. *See Anderson v. United States*, 468 F. Supp. 2d 780 (D. Md. 2007) (District Court for the District of Maryland denied petitioner's claim for ineffectiveness of appellate counsel in her § 2255 Motion to Vacate where one of petitioner's arguments misstated the law and the second argument would have been futile given the overwhelming evidence adduced at trial). All of Mr. Thompson's arguments for insufficiency of evidence are either based on misstatements of the

law or would have been futile to argue on appeal because of the government's overwhelming evidence and the standard of review.  Therefore, appellate counsel was not ineffective.

The argument that the evidence was insufficient because there was no positive identification of Mr. Thompson when the informant bought drugs from him and because Mr. Thompson was not arrested on the scene would have been futile.  When a confidential informant ("CI") facilitates a controlled drug purchases, defendants are often not arrested on the scene because that would compromise the CI.  Detective Minton testified that when he identified Mr. Thompson after the controlled purchase he "immediately" recognized that "he was the person I had seen making the sale during my controlled purchase."  Tr. of Day 1 at 45, Lines 13-15. Detective Minton identified Thompson through his Maryland State ID.  *See* Tr. of Day 1 at 46, Line 3.  The appellate court would have been required to view this, and all the other, evidence connecting Mr. Thompson to the crimes in the light most favorable to the prosecution.  *Gullett*, 75 F.3d at 947 (4th Cir. 1996).  Thus, this argument would have been futile.

Mr. Thompson's argument that the evidence was insufficient because the informant did not testify is based on a misunderstanding that the CI is required to testify in every case where the police use a CI to facilitate a controlled drug purchase.  Trial counsel filed the necessary motions to force the government to disclose the identity of the CI and the government disclosed his identity.  *See* Exhibit A.  Trial counsel and Thompson elected not to call the CI because they believed it would harm the defense.  *See Id.*  The CI would have been required to testify if the government offered his out-of-court statements.  *See Crawford v. Washington*, 541 U.S. 36 (2004) (holding out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine witnesses).  However, the Court did not admit any out-of-court statements by the

CI. Thus, the CI was not required to testify and Mr. Thompson's argument is based on a misstatement of the law.

The argument that the evidence was insufficient because the police did not follow their own protocol would have been futile.  Thompson says the Baltimore City Police Department did not follow usual protocol for controlled drug purchases and surveillance of drug houses when they did not record the serial numbers of the bills used in the controlled buy and they did not place a wire on the confidential informant.  Thompson's Pet. at 29.  There is no evidence in the record about the Police protocols, but they are not, in any case,  legal requirements.  Although the CI was not wearing a wire, Detective Minton testified that he *saw* the entire narcotics transaction between Mr. Thompson and the CI.  *See* Tr. of Day 1 at 40.  Criminalist Savitri Sharma with the Baltimore City Police Department tested the substance sold during the controlled purchase and concluded that it contained cocaine base.  *See* Tr. of Day 2 at 78.  The appellate court would have been required to view this, and all the other, evidence connecting Mr. Thompson to the crimes in the light most favorable to the prosecution.  *Gullett*, 75 F.3d at 947 (4th Cir. 1996).  Consequently, this argument would have been futile.

Mr. Thompson's argument that the evidence was insufficient because Detective Minton's identification of Mr. Thompson was questionable would have been futile.  Thompson claims that Minton's view of the controlled buy was obscured, and that he observed the controlled buy without a partner.  Thompson's Br. at 18.  There is no requirement that Detective Minton's testimony be corroborated by a partner.  Detective Minton testified that given his proximity to the controlled purchase, he did not need to use binoculars.  *See* Tr. of Day 1 at 39.  Defense counsel had an opportunity to cross-examine Detective Minton.  Given the standard of review for insufficiency arguments, this argument would have been futile.

Thompson thinks the evidence was insufficient because no fingerprints were lifted and "the jury convicted him on weak circumstantial evidence, no direct evidence." Thompson's Pet. at 39. Mr. Thompson misunderstands the law because "a conviction may rely entirely on circumstantial evidence." *United States v. Bonner*, 648 F.3d 209, 213 (4th Cir. 2011) (citation omitted).

Mr. Thompson's argument that the evidence was insufficient because witnesses Lansey and Sharma could not tie Mr. Thompson to the crime would have been futile. Even accepting, *arguendo*, that these witnesses did not connect Mr. Thompson to the crime, Detective Minton did connect Mr. Thompson when he testified about his observations during the controlled purchase. Any contradiction between Lansey and Sharma and Detective Minton would have to be resolved in favor of the government. *See United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (holding an appellate court "must assume that the jury resolved all contradictions ... in favor of the Government.") (citation omitted). Because this argument would have been futile, appellate counsel was not ineffective for failing to raise it.

Finally, the argument that the evidence was insufficient because Tracy Alston was not credible and his testimony was impossible to corroborate would have been futile and is based on a misstatement of the law. The credibility argument would have been futile because an appellate court is "not entitled to weigh the evidence or to assess the credibility of witnesses, but must assume that the jury resolved all contradictions ... in favor of the Government." *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (citation omitted). "The uncorroborated testimony of one witness or an accomplice may be sufficient to sustain a conviction." *United States v. Strong*, 67 F. App'x 198, 199 (4th Cir. 2003) (citing *United States v. Wilson,* 115 F.3d 1185, 1190 (4th Cir.1997)). Thus, appellate counsel was not ineffective for not raising this argument.

**d. The District Court denied two Rule 29 Motions and appellate counsel did not find any insufficiency of the evidence arguments to be meritorious.**

Supporting the case that appellate counsel was not ineffective for failing to raise Mr. Thompson's insufficiency arguments is the fact that the District Court denied two Rule 29 Motions for Judgment of Acquittal. The Court denied the first of these motions at the end of the government's case and the second at the end of all the evidence. *See* Tr. of Day 3 at 17, Lines 18-19; s*ee* Tr. of Day 3 at 82, Lines 20-21. In denying these motions, the District Court ruled that there was sufficient evidence to support a conviction. Additionally, according to an email sent from appellate counsel to AUSA, Robert Harding, appellate counsel did not see any meritorious insufficiency of the evidence arguments. *See* Appendix B. Because of the presumption that counsel's conduct was within the wide range of reasonable assistance, *see Strickland*, 466 U.S. at 689, the presumption is that the decision not to pursue insufficiency arguments was reasonable (i.e. not ineffective assistance of counsel).

**3. Trial counsel did not fail to honor Mr. Thompson's right to confront his accuser because the District Court did not admit any out-of-court statements by the CI.**

Mr. Thompson argues that "[c]onsidering Petitioner was not provided with an opportunity to confront the Confidential Informant (C.I.), his right to confront his accuser was violated, which, in turn violated his Sixth Amendment right." Thompson's Pet. at 40. Most recently, the Supreme Court addressed the Sixth Amendment's Confrontation Clause in *Crawford v. Washington*, 541 U.S. 36 (2004). The Court held that the Confrontation Clause, providing that accused has a right to confront and cross-examine witnesses against him, applies not only to in-court testimony, but also to *out-of-court statements* introduced at trial, regardless of the admissibility of the out-of-court statements. *See Id.* at 50-51 (emphasis added). Unless a witness is unavailable and the defendant had a prior opportunity to cross-examine the witness,

*out-of-court statements* by the witnesses that are testimonial are barred.  *See Id.* at 53-54 (emphasis added).

In this case, the Confrontation Clause was not violated because the Court did not admit any out-of-court statements by the CI.  Detective Minton only testified as to what he saw the CI do, he never testified as to what the CI said to him.  *See* Tr. of Day 1 at 33-95.  Furthermore, trial counsel and Mr. Thompson elected not to call the CI to testify at trial because they believed it would harm the defense.  *See* Exhibit A .  As a result, Mr. Thompson was not denied a right to cross-examine his accuser because the CI never testified.

Thus, because Mr. Thompson's Sixth Amendment right to confront his accuser was not violated, trial counsel was not ineffective.

### 4. Appellate counsel was not ineffective for not arguing that the Fair Sentencing Act's (FSA's) mandatory minimums should apply to Mr. Thompson's sentencing.

Mr. Thompson asks this Court to "retroactively apply FSA's mandatory minimums to his case," Thompson's Pet. at 42, and argues that his appellate counsel was ineffective for not arguing that the FSA's mandatory minimums should apply retroactively.  This argument is meritless for two reasons.  First, the Fourth Circuit Court of Appeals recently held that the FSA does not apply retroactively.  *See United States v. Bullard*, 645 F.3d 237 (4th Cir. 2011) *cert. denied*, 132 S. Ct. 356, 181 L. Ed. 2d 225 (U.S. 2011).  Second, the only impact of the FSA was to change the mandatory minimum sentence Mr. Thompson would have faced.  Given his previous drug conviction, the District Court had authority to sentence Mr. Thompson to far more time than the mandatory minimum both before and after the FSA.

The District Court convicted Mr. Thompson on December 10, 2009 and sentenced him on March 19, 2010.  On August 3, 2010, Congress passed the Fair Sentencing Act of 2010 to "restore fairness to Federal cocaine sentencing."  Fair Sentencing Act of 2010, PL 111-220, 124

Stat 2372 (2010).  The Act increased the quantity of cocaine base requiring a mandatory sentence

of 10 years from 50 grams to 280 grams.  *See Id.*  Because the District Court convicted Mr.

Thompson of possession with intent to distribute more than 28 grams, but less than 280 grams, if

the FSA applied retroactively, he would have been subject to a 5-year minimum, as opposed to a

10-year minimum.  *See* 21 U.S.C. § 960 (2010).  However, the FSA does not apply retroactively.

The Fourth Circuit has recently held that the Savings Statute at 1 U.S.C. § 109, bars the FSA's

retroactive application.  *See Bullard*, 645 F.3d at 248 ("We agree [with the government] and join

all of our sister circuits to have addressed the issue in holding that the Savings Statute does

indeed preclude retroactive application of the FSA.").

     Even if only a 5-year mandatory minimum applied to Mr. Thompson, his previous drug

conviction gave the District Court authority, under the Sentencing Guidelines, to exceed that

minimum sentence.  Before trial, the government filed a Notice of Prior Felony Drug Conviction

Pursuant to 21 U.S.C. § 851.  On July 31, 1995 Mr. Thompson was convicted of Possession of

Narcotics with Intent to Distribute, which is a felony.  *See* Attachment A.  With this prior felony

conviction the sentencing range became 20 years to life imprisonment.  *See* 21 U.S.C. § 960

(2010).  Taking into account the disparity between the penalties for crack cocaine and the

penalties for powder cocaine, the District Court imposed a sentence of 25 years.  *See* Sentencing

Tr. at 21-22.

     Thus, appellate counsel was not ineffective.  The FSA not retroactive, and Thompson's

prior felony drug conviction exposed him to far more than the minimum sentence.

**5.  Appellate counsel was not ineffective for not arguing that the District Court had to find him guilty of an offense involving crack cocaine before it could penalize him <u>under 21 U.S.C. § 841(b)(1)(A)(iii).</u>**

Mr. Thompson contends that his appellate counsel was ineffective for not arguing that the District Court committed an error when it applied the penalties for "cocaine base."  Thompson's Pet. at 50.

There is no legal authority for Thompson's proposition that the phrase "cocaine base" in 21 U.S.C. § 841 is ambiguous and that congress distinguished "crack" form "cocaine base" and intended for enhanced penalties to apply only to crack.  Thompson's Pet. at 50.  Thompson was charged with possession of "cocaine base" with the intent to distribute, and the statute and sentencing guidelines both penalize "cocaine base." Appellate counsel was not ineffective for omitting to argue a claim that is without legal support.

**6.  Trial counsel was not ineffective for failing to investigate Mr. Thompson's criminal history because his prior offense was a felony.**

Mr. Thompson asserts that "his lawyer's performance was deficient for failing to verify his prior convictions."  Thompson's Pet. at 54.  Mr. Thompson contends that his "controlled substance offense that was adjudicated on July 31, 1995 [ . . . ] was a misdemeanor, rather than a felony."  *Id.* at 55.  Mr. Thompson pled guilty and was sentenced to 3 years imprisonment for Possession of a Controlled Dangerous Substance with Intent to Manufacture/Distribute/Dispense, which is a felony.  The affidavit of trial counsel confirms this offense was a felony.  *See* Attachment A ("Defendant's criminal record indicated he was convicted on July 31, 1995 of Possession of Narcotics with the Intent to Distribute[.]  That offense is a felony under Federal and State law[.]  I never investigated or challenged the legitimacy of that conviction because I was never asked to do so by the Defendant.").  Thus, trial counsel was not ineffective for not challenging the 1995 offense because it was a felony, not a misdemeanor.

**CONCLUSION**

22

Mr. Thompson has failed to raise any justifiable grounds for relief under 28 U.S.C. §

2255, and for the reasons stated above, the motion should be denied.


Respectfully Submitted,

Rod. Rosentein,
United States Attorney


By:   _____

Robert R. Harding
Assistant United States Attorney

**Certificate of Service**

I certify that ON February 4, 2012, I served the government's Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 by electronic filing, and also that a copy was mailed by first class mail to :

Antonio Thompson
Reg. No. 44106-037
FCI
P.O. Box 2000
Fort Dix, N.J. 08640

_____
Robert R. Harding